# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| GENOSOURCE, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>SECURA INSURANCE,<br><br>        Defendant. | Case No. 21-CV-86-CJW-KEM<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

_____

Defendant Secura Insurance moves to strike two supplemental expert reports filed by Plaintiff GenoSource, LLC, after the expiration of all expert deadlines. Doc. 54. I **grant** the motion **in part and deny** the motion **in part**.

## I. BACKGROUND

GenoSource's claims in this case stem from the August 2020 derecho windstorm, which caused property damage across much of eastern Iowa. GenoSource owns a dairy farm that sustained damage in the derecho. Doc. 2. GenoSource filed a claim with its insurance company, Secura, which estimated it would cost more than $2 million to repair the damaged barns and other structures on the dairy farm. *Id*. GenoSource began making repairs, but due to labor and materials shortages, it did not complete restoration within a year. *Id*. Secura denied GenoSource's request for an extension of the one-year deadline. *Id*. In addition, Secura denied GenoSource's claim for extra expenses incurred to continue normal dairy farming operations on the damaged farm, and Secura did not rule on GenoSource's claim for damage to personal property. *Id*. GenoSource brought this suit for breach of contract and bad-faith denial of insurance coverage based on Secura's

failure to fully cover the costs to repair the farm structures, Secura's denial of the extra expenses claim, and Secura's delay in deciding claims. *Id.*

The scheduling order in this case set the following deadlines:

- Plaintiff's expert disclosures: April 6, 2022;
- Defendant's expert disclosures: June 6, 2022;
- Plaintiff's rebuttal expert disclosures: July 7, 2022;
- Discovery completion: August 23, 2022;
- Dispositive motions: September 23, 2022.

Docs. 16, 20. Trial was set for March 27, 2023. Doc. 18.

On its disclosure deadline, GenoSource produced expert reports from veterinarian Nigel Cook and from lawyer and certified insurance underwriter Noel McKibbin. Docs. 55-1, 55-3. Cook's expert report consisted of two pages of opinion and tens of pages of his resume. He described his extensive experience as a bovine veterinarian and professor. Doc. 55-1. He noted that Secura's December 2020 investigative report detailed milk and animal losses immediately following the derecho, in August and September 2020. *Id.* But he noted that the continued loss of facilities (due to damage or the facilities undergoing repairs) would have "potentially" led to overstocking the remaining facilities. *Id.* This loss of "resting, drinking[,] and feeding space for the cows" as the result of being overcrowded would have subjected the cows to increased stress and increased heat. *Id.* Cook opined that this stress "would have ongoing negative effects for the remainder of the lactation of" "cows in early lactation" and "cows calving" during this time. *Id.* He also noted "heat stress on cows in utero has been shown to lessen production post[-]calving in these animals." *Id.* He concluded that the December 2020 report "fail[ed] to estimate the totality of the losses likely sustained by the herd over the ensuing months . . . . relate[d] to the stresses placed on the cows calving and milking in heavily compromised facilities." *Id.*

2

McKibbin's expert report focused on interpreting the insurance policy. Doc. 55-3. It set out the background facts similarly to the complaint. *Id.* McKibbin excerpted the "extra expenses" portion of the insurance contract and set out general caselaw on coverage for business interruptions, noting that such coverage generally applies for the time required to make repairs to the damaged property with the exercise of due diligence. *Id.* McKibbin also set out caselaw on bad faith under Iowa law. *Id.* McKibbin concluded that Secura acted unreasonably (and in bad faith) by denying the claim based on the one-year deadline (an "arbitrary 'industry standard timeline'"), which was contrary to the Iowa insurance commissioner's June 2021 bulletin stating that the derecho made it difficult for some insureds to make repairs within one year, given the significant damage, limited number of contractors, and material shortages, and that "invoking contractual provisions prohibiting payment of recoverable depreciation after a certain deadline may be viewed as a failure to act in good faith" under Iowa law. *Id.* McKibbin also opined that Secura acted in bad faith by attempting to secure a drastically low settlement with GenoSource. *Id.* McKibbin further identified several portions of the Iowa administrative code identifying acts that constitute bad faith and outlined behavior by Secura constituting bad faith under these provisions, including Secura's attempt to leverage settlement of a portion of the claim for settlement of the entire claim. *Id.* McKibbin concluded that Secura delayed assessing damage to the dairy; "lacked policies and procedure to evaluate a large dairy operation like GenoSource"; arbitrarily set deadlines and standards; "failed to provide guidance and proof of loss forms to the insured"; and acted unreasonably and in bad faith, placing "their own loss ratio above the benefits owed to their insured." *Id.*

Secura served its expert reports within the deadline. In early July, GenoSource identified Cook as a rebuttal expert to Secura's expert Stacy Niemann, noting the rebuttal opinions would "relate to ongoing herd stress and impact on milk . . . and embryo production," consistent with Cook's previous report. Doc. 55-4. GenoSource also identified McKibbin to rebut Niemann's opinions, noting he would testify (consistent with his prior report) about the "[a]rbitrary dates established by Secura" to complete work and

the date the business interruption concluded; additional damages due to GenoSource under the policy; "Secura's reliance on independent appraisers to estimate when repairs should have been completed and a return to normal business operations"; and Secura's lack of appropriate internal oversight and review of the claim. *Id.*

Secura filed a motion for summary judgment in mid-July. Doc. 24. A few days before GenoSource's summary-judgment resistance deadline, on August 18, 2022, GenoSource served a "supplemental" expert report by Cook. Doc. 55-6. The report indicates that it was "compiled subsequent to an interview with the farm conducted by telephone on July 29, 2022[,] . . . . detail[ing] the timeline of the repairs to the facilities, with continued disruptions to cow housing and management." *Id.* The report is much longer than Cook's first report, totaling 10 pages, and includes data analysis (unlike the first report). *Id.* Cook indicates that he compared the herd's performance data prior to the derecho to the herd's performance data after the derecho, which showed that when freezing conditions began in the winter of 2020, the cow's milk had a higher average somatic cell count than prior years, indicating udder infection. *Id.* Cook noted that "[o]pen, damaged roofing, and unrepaired curtain side walls" to the barns identified in an August 2020 report "permitted rain and snow to fall into the barns," "creating wet contaminated bedding" and risking bacteria infections to the cows. *Id.* Cook also noted GenoSource farmers had to treat about 100 cases of mastitis (caused by infection) a month during the winter and spring of 2021. *Id.* Cook estimated this treatment cost $190 per cow and included a table that set out average costs of mastitis treatment. *Id.* He also calculated milk loss from udder infection "using Somatic Cell Count Log Linear Scores," setting out data and calculations showing $32,000 to $70,000 in losses. *Id.* Cook further noted that the data showed decreased milk production continued through 2021, which he opined was caused by lack of air flow in the barns in the hot weather (due to fans not being replaced until June 2021 and "side curtains" that allowed air flow not being replaced until even later). *Id.*

4

GenoSource filed its resistance to Secura's summary-judgment motion on August 22. Doc. 41. The next day, it supplemented McKibbin's expert report. Doc. 55-7. The changes to McKibbin's report are less extensive than the changes to Cook's report. *See* Doc. 55-5 (redline comparing supplemental report to original). McKibbin's supplemental report added a few additional sentences about the severity of the derecho. *Id.* He also included an excerpt of the insurance policy covering damage to farm buildings. *Id.* He opined that the policy does not contain a one-year deadline for repairs (McKibbin's initial report does not specifically say that the policy does not contain a one-year deadline for repairs, although it does state "[t]he [one year] time limitation policy pertains to when a legal action can be brought," calls the one-year deadline for repairs "unfounded and unreasonable," opines Secura arbitrarily established deadlines, and accuses Secura of misrepresenting the insurance policy by fabricating deadlines). *Id.* He summarized communications from Secura to GenoSource setting out the one-year deadline for repairs, which he opined were used to "manipulate and harm" GenoSource and were an act of bad faith by misrepresenting the policy's terms. *Id.* The supplemental report expands on the opinion in the original report that Secura misrepresented the policy by employing an arbitrary "industry standards" timeline, noting that proof of these "industry standards" were never provided to GenoSource and that GenoSource is in a better position to determine "industry standards" here than Secura. *Id.* The supplemental report also notes that an adjuster with limited experience was assigned to GenoSource's claim, and this adjuster assigned the claim to independent adjusters with limited supervision (providing more details to statements in the original report that "Secura lacked the policies and procedures to manage this type of catastrophic claim"; that Secura "lacked policies and procedures to evaluate a large dairy operation like GenoSource"; and that Secura "should possess professional policies, procedures, and staff" capable of adjusting for events like the derecho but does not "[b]ased upon their performance on this claim"). *Id.*

Secura moves to strike the supplemental expert reports as untimely under the expert-disclosure deadlines. Doc. 54. GenoSource resists. Doc. 55.

## II. DISCUSSION

Under the scheduling order and Federal Rules of Civil Procedure, GenoSource had to disclose "a complete statement of all opinions [its expert witnesses would] express [at trial] and the basis and reasons for them" by April 6, 2022.[1]  Rule 26 contemplates supplemental disclosures,[2] but "[d]iscovery of expert opinion must not be allowed to degenerate into a game of evasion"; the purpose of the discovery rules are to "narrow the issues, *to eliminate surprise*, and to achieve substantial justice."[3]  "The purpose of a supplemental report is to 'inform the opposing party of any changes or alterations,' not 'to provide an extension of the deadline by which a party must deliver the lion's share of its expert information.'"[4]  Experts may not "'l[ie] in wait' to express new opinions at the last minute, thereby denying the opposing party the opportunity to depose the expert on the new information or closely examine the expert's new testimony."[5]  The duty to supplement under Rule 26 "arises when the expert subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report incomplete or inaccurate."[6]  Supplemental reports cannot be used "whenever a

---

[1] **Fed. R. Civ. P. 26(a)(2)(B)(i)**.

[2] *See* **Fed. R. Civ. P. 26(e)(2)**.

[3] *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999) (quoting *Voegeli v. Lewis,* 568 F.2d 89, 97 (8th Cir. 1977); *Mawby v. United States,* 999 F.2d 1252, 1254 (8th Cir. 1993)).

[4] *Nissen v. Johnson*, No. CIV. 09-4166-KES, 2011 WL 5006507, at *2 (D.S.D. Oct. 20, 2011) (quoting *Tenbarge,* 190 F.3d at 865; *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,* 73 F.3d 546, 571 (5th Cir. 1996)).

[5] *Robson v. Duckpond Ltd.*, No. 4:19-cv-01862-SRC, 2021 WL 719887, at *3 (E.D. Mo. Feb. 24, 2021) (quoting *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)).

[6] *Id.* (quoting *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2017 WL 3116138, at *3 (E.D Mo. July 21, 2017)).

party wants to bolster or submit additional expert opinions, . . . wreak[ing] havoc on docket control and amount[ing] to unlimited expert opinion preparation."[7] "A supplemental expert report that states additional opinions or rationales . . . exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1)."[8]

"[F]ailure to disclose in a timely manner is equivalent to failure to disclose."[9] When a party violates the expert-disclosure rules, "the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case."[10] The court may exclude the party from relying on the expert opinion at trial under Rule 37, "unless the failure [to disclose] was substantially justified or is harmless."[11] Factors to consider include "the reason for noncompliance" (including whether there is evidence of bad faith or willfulness), "the surprise and prejudice to the opposing party" and whether the prejudiced can be cured, "the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony."[12]

### A. Nigel Cook's Supplemental Expert Report

Cook's supplemental report is based on new information, but not new information obtained in discovery from Secura; rather, Cook updated his report based on data newly

---

[7] *Id.* (cleaned up) (quoting *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)).

[8] *Est. of Bruess v. Blount Int'l, Inc.*, No. C09-2055, 2011 WL 2680760, at *8 (N.D. Iowa July 8, 2011) (quoting *Cohlmia v. Ardent Health Services, LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008)).

[9] *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998).

[10] *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).

[11] **Fed. R. Civ. P. 37(c)(1)** (additionally describing alternative sanctions).

[12] *Wegener*, 527 F.3d at 692; *see also* **Rodrick v. Wal-Mart Stores E., L.P.**, 666 F.3d 1093, 1096-97 (8th Cir. 2012).

provided by GenoSource in its possession at the time of Cook's initial report.[13] Originally, Cook opined generally that crowding cows can cause increased stress and heat, leading to lactation and calving issues. In his supplemental opinion, he employs an entirely new data analysis and methodology to calculate damages, as well as opining for the first time that freezing conditions could have also impacted the cow's productivity. Cook's supplemental report "materially alters[]" rather than "merely clarify[s] his original report."[14] These opinions should have been disclosed in April 2022 and are not "supplemental" opinions under Rule 26(e).

GenoSource proffers no reason why it could not have provided Cook with the underlying data earlier in time and disclosed his new opinions by the original expert deadline. Thus, the failure to disclose was not substantially justified (even though there is no evidence of bad faith).[15] In addition, late disclosure is not harmless. GenoSource produced completely new expert opinions on damages at the close of discovery, after Secura had already obtained its own experts and filed a motion for summary judgment. The nature of the new opinions are such that Secura may wish to obtain its own expert to analyze the data in rebuttal, necessitating a continuation of the discovery deadline and trial date, as well as perhaps re-briefing the dispositive motion. This delay would prejudice Secura and disrupt the court's schedule.[16] Finally, the information in Cook's

---

[13] *Cf.* **Wells v. Lamplight Farms, Inc.**, 303 F.R.D. 530, 536 (N.D. Iowa 2014) (supplementation under Rule 26(e) is not based on "new information" when "plaintiffs made no effort to obtain that information in time to comply with their expert disclosure deadline," meaning the information was not unavailable but rather, "plaintiffs were dilatory in attempting to gather it").

[14] **Williams v. TESCO Servs., Inc.**, 719 F.3d 968, 976 (8th Cir. 2013).

[15] **In re Baycol Prods. Litig.**, 596 F.3d 884, 888 (8th Cir. 2010) (holding that failure to disclose opinion by deadline was not substantially justified when "there [wa]s nothing in the record to indicate that [the expert] could not have reviewed [the] records in detail at the time of his initial report").

[16] *See id.* ("[I]t is not unreasonable to conclude that [the opposing party] would be prejudiced by [the] late submission, given that [the opposing party] had already deposed [the expert] and moved for summary judgment based on his initial report and deposition."); *see also* **Williams**, 719 F.3d

8

supplemental report is not so important that exclusion will necessarily result in dismissal of GenoSource's claim.[17]

Accordingly, I strike Cook's supplemental expert report.

### B. Noel McKibbin's Supplemental Expert Report

McKibbin's supplemental report is different than Cook's. Indeed, Secura even describes McKibbin's supplemental report as "nearly identical to the initial report, with some revisions." Doc. 54-1 at 4. Rather than offering entirely new opinions, McKibbin offers additional explanation for opinions contained in the original report, as well as making clear some opinions suggested by the original report (such as that the policy did not explicitly provide for a one-year deadline to make repairs). Although McKibbin could have included this information in his original report, it is more akin to the "clarifying" contemplated by Rule 26(e) for supplemental reports.

In any event, Secura is not prejudiced by McKibbin's supplemental report. "The purpose of the written reports is not to replicate every word that the expert might say on the stand, but is instead intended to convey the substance of the expert's opinion, so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary."[18] Here, the additions made in McKibbin's supplemental report are the kind of clarifying explanations McKibbin might have provided through testimony based on the

---

at 976 (holding that "untimeliness was not substantially harmless" when "allowing the belated second report would require reopening discovery" to redepose the expert, "thus delaying trial"); *Trost*, 162 F.3d at 1008-09 (holding that prejudice existed when opposing party had already completed summary-judgment briefing and new opinion would necessitate reopening discovery and continuing the trial date) .

[17] *Cf. Wegener*, 527 F.3d at 693 (supplemental evidence not important when "it was offered to prove a point in support of which a substantial amount of other evidence was presented"); *Dunning v. Bush*, 536 F.3d 879, 890 (8th Cir. 2008) ("A dismissal sanction is not warranted, except in cases of egregious conduct.").

[18] *Garrison v. New Fashion Pork LLP*, No. 18-CV-3073-CJW-MAR, 2020 WL 1318806, at *4 (N.D. Iowa Jan. 23, 2020) (internal quotation marks omitted) (quoting *Cooper v. Wullweber*, No. C10-1032, 2012 WL 1904806, at *4 (N.D. Iowa May 25, 2012)).

9

original report. The opinions in McKibbin's supplemental report can be anticipated by his original report and are not so novel that they necessitate additional discovery and motion briefing. Thus, while GenoSource perhaps could have and should have produced the supplemental report at the time of initial expert disclosures, the late disclosure is harmless.

I decline to strike McKibbin's supplemental expert report.

### III. CONCLUSION

Secura's motion to strike (Doc. 54) is **granted in part** (the court strikes Nigel Cook's supplemental expert report) **and denied in part** (as to Noel McKibbin's expert report).

**SO ORDERED** on October 28, 2022.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa